IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PATRICK R., a minor, by and
through his next friends and
parents, Patricia R. and Chris R.

    Plaintiffs,

v.                              CASE NO. 99- 1153 -CIV-T-25E

vi.                           JURY TRIAL DEMANDED

PASCO COUNTY SCHOOL BOARD,

    Defendant.
_____/

# COMPLAINT

Plaintiffs, Patrick R., his next friends and parents Patricia R. and Chris R. (hereinafter collectively referred to as "Plaintiffs"), by and through their undersigned attorneys, sue the Pasco County School Board for violations of the Individuals with Disabilities Education Act, 20 U.S.C. §1400 et seq., Florida Statutes §230.23 and Section 504 of The Rehabilitation Act, 29 U.S.C. §794.

## I. PARTIES

1. Plaintiff Patrick R. ("Patrick") is a minor child presently enrolled in Pasco County public schools. Patrick is a "child with disabilities" entitled to the protections of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400 *et seq.* and Florida State law.

2. Plaintiffs Patricia R. and Chris R. (herein collectively referred to as the "R.s") are Patrick's parents and next friends. Patrick lives with both his parents in Pasco County.

3. Defendant Pasco County School Board ("the District") is a Local Education Authority ("LEA") within the definition of 20 U.S.C. § 1401(15). Additionally, the District is a recipient of federal funds and is subject to the provisions of Section 504 of The Rehabilitation Act, 29 U.S.C. §794

## II. JURISDICTION & VENUE

4. This action is brought pursuant to 20 U.S.C. §1400 et seq., and Section 504 of The Rehabilitation Act, 29 U.S.C. §794 and Florida Statute §230.23. Accordingly, this Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367, and 20 U.S.C. §1415(e)(2).

5. All actions complained of took place within Pasco County, Florida, and the District is located in Pasco County, Florida. Accordingly, venue in the Tampa Division of the Middle District of Florida is proper pursuant to 28 U.S.C. § 1391 and Local Rule 1.02 of the Local Rules for the Middle District of Florida.

6. As required by statute, Plaintiffs initiated review of the District's actions in a state administrative hearing. Plaintiffs were adversely affected by a final order issued on April 15, 1999 by Florida's Division of Administrative Hearings ("the Division"). Pursuant to 20 U.S.C. § 1415(e), Plaintiffs have the right to bring an independent action in the United States District Court.

7. All conditions precedent to filing this action have either occurred or been waived.

## III. FACTS

8. Patrick R. is a 13 year old student and is currently a seventh grader at Hudson Middle School, a public school in the Pasco County school system and within the jurisdiction of the District. Patrick has attended schools within the District since kindergarten.

9. Patrick is eligible for exceptional student education services as a student with a speech or language impairment and a specific learning disability. Patrick has also been diagnosed with severe attentional deficits and a central auditory processing disorder ("CAPD").

10. Patrick's parents obtained private tutoring for Patrick in mathematics and reading during his fourth and fifth grade years because they were concerned with his lack of academic progress in public school.

11. Patrick was first diagnosed with CAPD during the course of his fifth grade year. Mrs. R. provided background materials on Patrick's disorder and attempted to work with school personnel to structure a meaningful educational opportunity for Patrick in a mainstream classroom setting.

12. Although some of Mrs. R.'s suggestions were technically implemented, the teachers responsible for Patrick's educational environment in fifth grade actively hindered the implementation of Mrs. R.'s recommendations.

13. Prior to Patrick's sixth grade year, the R.s worked with the District and school personnel to structure a supportive educational environment for Patrick at Hudson Middle School.

14. In a series of conferences held to write Patrick's 1997-98 Individual Education Plan ("IEP"), Mrs. R. requested that information about Patrick's progress be collected from the beginning of the school year so that his progress could be measured. The District personnel explained the concept of gathering baseline data, then measuring from that data. The IEP team then wrote performance measurement criteria into P.R.'s 1997-98 IEP; those criteria were designed to measure Patrick's progress.

15. In sixth grade, Patrick attended mainstream academic classes under an "inclusion" model. In each of Patrick's core academic subjects, a special education "co-teacher" was present to assist Patrick and other exceptional students in his classes. Patrick also attended a learning strategies class with his co-teacher. Additionally, Patrick was supposed to receive speech and language services.

16. Patrick's sixth grade school year went far more smoothly than his fifth grade year. Communications with the school were good and Patrick's inclusion teacher gave the R.s regular and favorable feedback about Patrick's progress. The R.s were pleased with both Patrick's grades and the school's favorable reports.

17. Given the positive information they received from the school, the R.s chose not to have Patrick tutored during the sixth grade.

18. Prior to attending the seventh grade (1998-99) IEP conference, the R.s were very enthusiastic about Patrick's education at Hudson Middle School.

19. The conference to write Patrick's 1998-99 IEP for seventh grade was scheduled for May 19, 1998 at 8:00 a.m. The District failed to have the statutorily required participants present for the IEP conference.

20. The courses and educational supports offered by the District in the May 19th IEP conference were not adequate to meet Patrick's special educational needs. Specifically, the District recommended placing Patrick in two core classes, language arts and science, without the assistance of a special education co-teacher.

21. At the May 19th IEP conference, the District failed to produce the data it was to collect pursuant to the 1997-98 IEP.

22. The only data the District was able to provide Mrs. R. concerning Patrick's progress were the 1997 and 1998 results of the Stanford Achievement Test. The 1998 scores were lower than the 1997 scores in numerous areas.

23. At the May 19th IEP conference, the District did not offer educational alternatives which would provide Patrick with an appropriate education in 1998-99. Accordingly, Mrs. R. left the meeting after two and a half hours. The District chose not to continue the meeting in her absence.

24. As a result of the District's failure to collect the data on Patrick's progress as promised, his apparent academic regression, and the District's proffer of an inappropriate educational setting, the R.s determined that the District was not providing their son with an appropriate public education. They decided that they

would not allow their son to lose another complete academic year without meaningful educational progress.

25. The R.s believed that the time for educating Patrick was slipping away and that they had to do something. The R.s knew that Patrick had done well with the private tutor. Based on his previous experience, the R.s decided to explore the possibility of sending Patrick there for full-time private education.

26. Unable to afford a full time private school, the R.s chose to have Patrick educated in a private school, Learning to Achieve, where he would receive direct instruction in reading and math from a state certified special education teacher. Patrick's instructor at Learning to Achieve had previously been his tutor for 4th and 5th grade.

27. The R.s sent numerous letters to the District throughout the summer of 1998 in which they described the inappropriate educational recommendations that were made in the May 19th IEP meeting. At no time did the District inform the R.s that they misunderstood the District's recommendations for Patrick's 7th grade placement.

28. On June 22, 1998, the R.s requested a due process hearing.

29. During May and June of 1998, the District proceeded as if an IEP had been written in May, 1998. It was not until July 1 that the District invited the R.s to a new IEP meeting. Due to scheduling conflicts, the next IEP conference was scheduled for August 20, 1998.

30. The District refused to cooperate with the request to create a complete schedule for Patrick and waited until the August 20th IEP meeting, three months after the R.s first informed the school of their intention to obtain part-time private schooling for Patrick, to inform the R.s that approval would have to be granted by a public vote of the District.

31. In the meantime, throughout the summer, the R.s repeatedly informed the District of their intention to have Patrick privately educated in math and reading during part of the day, and publicly educated in the remaining subjects at Hudson Middle School. They repeatedly requested the District's cooperation in scheduling Patrick's day so that all of his academic classes would be covered between the two schools.

32. When the R.s went to a public meeting of the District to seek approval for their scheduling request, the school personnel actively, and unjustifiably, thwarted the R.s' attempt to obtain the District's approval. As a result, during the first semester of the 1998-99 school year, Patrick took math and reading at Learning to Achieve and at Hudson Middle School, but had no science class and only a portion of social studies.

33. When Patrick began at Learning to Achieve, his pre-tests showed that his reading level entering 7th grade was the same as it was at the end of 5th grade, further confirming the R.s' fear that Patrick had made no academic progress during his 6th grade year at Hudson.

7

34. Patrick has made substantial, measurable progress in reading and math at Learning to Achieve. Patrick would not have achieved that progress had he attended Hudson Middle School full time.

35. The speech and language services the District provided to Patrick do not address his specific CAPD auditory processing needs. Accordingly, the R.s were forced to obtain private speech services for Patrick.

36. As a result of the R.s' decision to initiate a due process hearing, the District undertook, for the first time, to obtain a comprehensive evaluation of Patrick.

37. On December 16, 1998, an IEP meeting was reconvened at Hudson Middle School. The R.s were able to work out a satisfactory IEP. The District was able to create a schedule which permits Patrick to have instruction in all core academic subjects.

38. At no time between May 20, 1998 and December 16, 1998, did the District prepare an IEP for Patrick.

39. The R.s have incurred costs in excess of $11,000 in privately educating Patrick during his 7th grade year.

40. The R.s were forced to hire counsel to represent them in this matter and have incurred substantial legal fees.

### Count I – IDEA, Florida Statute

41. This is an action for educational reimbursement and compensatory education brought pursuant to the IDEA, 20 U.S.C. §1400 et seq., Florida Statutes §230.2320.

42. All allegations set forth in paragraphs 1-40 above are restated and incorporated by reference as fully as if specifically set forth herein

43. The District violated the procedural requirements of the IDEA and Florida law, found in 20 U.S.C §1414(d); 34 CFR §300.344; and Fla. Admin. Code 6A-6.03028(4), by failing to have the required participants available during the May, 1998 IEP conference. Specifically,

    a. no local education association representative was present at the May, 1998 IEP conference; and

    b. no regular education teacher was present at the May 1998 IEP conference.

44. The District violated the procedural requirements of the IDEA and Florida law when it failed to collect, maintain and present information by which the R.s could determine whether the objective criteria in the May, 1997 IEP had been attained as required by 20 U.S.C. §1414(d); Fla. Admin. Code 6A-6.03028(1)(e).

45. The District violated the procedural requirements of the IDEA and Florida law when it generated the May 1998 IEP because that IEP does not contain the essential elements required of an IEP. Specifically, the May 1998 IEP does not contain the following items required by 20 U.S.C. §1414.(d); Fla. Admin. Code 6A-6.03028(1):

    a. an adequate statement of Patrick's present level of performance;

    b. an adequate statement of annual goals;

    c. an adequate statement of short-term instructional objectives;

    d. an adequate statement of the specific educational services to be provided to Patrick; and

    e. objective criteria, evaluation procedure and schedules for determining whether instruction objectives were being achieved.

46. The District failed to comply with the procedures set forth in the IDEA and Florida law when it failed to complete the proposed IEP in May, 1998 or create a new IEP for Patrick prior to the beginning of the 1998-99 school year as required by 20 U.S.C. §1414(a)(5), 34 CFR §300.342(a), and Fla. Admin. Code 6A-6.3028(3)(a)

47. The "proposed IEP" for the 1998-99 school year is substantively deficient in that it is not reasonably calculated to enable Patrick to make educational gains in the 1998-99 school year because it would have placed him in two mainstream, language intensive classes without any educational support to accommodate his disabilities.

48. The District denied Patrick a free appropriate public education by failing to provide him with speech therapy reasonably calculated to address his unique language needs in the 1997-98 school year.

49. The "proposed IEP" for the 1998-99 school year is substantively deficient in that it is not reasonably calculated to provide Patrick with speech services reasonably calculated to address Patrick's unique language needs.

50. In light of the R.s' prior efforts to get the District to provide a free appropriate public education for Patrick, and in light of the deficiencies in the "proposed IEP" for the 1998-99 school year, the R.s' decision to place Patrick in

private school was reasonable, and their choice of school was appropriate to meet Patrick's needs.

51.     The District's procedural and substantive defaults in its efforts to educate Patrick prior to his seventh grade year deprived Patrick of his right to a free appropriate public education.

52.     The District's actions or inaction precluded Patrick from making the meaningful educational progress he was capable of achieving.

WHEREFORE, Plaintiffs request that this Court enter a judgment:

a.      Finding that the District failed to comply with the procedural and substantive due process requirements of the IDEA and Florida law in its formulation of an IEP for the 1998-99 school year.

b.      Ordering the District to reimburse the R.s for the educational and speech therapy costs incurred by the R.s in the 1998-99 school year.

c.      Awarding the R.s reasonable attorneys' fees and costs; and

d.      Awarding such other relief as the Court deems necessary and proper.

## Count II – Rehabilitation Act

53.     This is an action for violation of Section 504 of The Rehabilitation Act, 29 U.S.C. §794.

54.     All allegations set forth in paragraphs 1-52 above are restated and incorporated herein by reference as fully as if specifically set forth herein.

55.     Patrick is a disabled individual entitled to the protections of §504 of The Rehabilitation Act.

56.     Patrick is "otherwise qualified" to participate in academic instruction at Hudson Middle School.

57.     Upon determining that they could only afford to obtain private education for mathematics and language arts, as an accommodation for Patrick's disabilities, the R.s requested that the District schedule Patrick's courses so that he would have science, social studies and his elective consecutively either in the morning or the afternoon.

58.     The course schedule requested by the R.s was feasible and reasonable. On the registration day prior to the start of the school year, the principal of Hudson Middle School provided Mr. R with a schedule which accommodated the R.s' request. However, a few minutes later the principal rescinded that schedule after consulting with the District's Director of Exceptional Student Education.

59.     The school personnel refused to issue the schedule requested by the R.s unless the approval of the District was obtained. The school personnel then urged the District not to grant the R.s' request for a scheduling change.

60.     Upon the advice of the District Superintendent and Director of Exceptional Education, the District refused to grant the R.s' request for a scheduling accommodation.

61.     The District's intentional and unreasonable refusal to provide Patrick with the reasonable scheduling accommodation requested by his parents resulted in his exclusion from participation in and deprived Patrick of the benefits educational

services provided to non-disabled students in violation of §504 of The Rehabilitation Act.

WHEREFORE, Plaintiffs request that this Court enter a judgment:

a.   Finding that the District discriminated against Patrick on the basis of his disability in violation of Section 504 of The Rehabilitation Act.

b.   Ordering the District to pay damages for its wrongful conduct.

c.   Awarding the R.s reasonable attorneys' fees and costs; and

d.   Awarding such other relief as the Court deems necessary and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury for all matters which, as a matter of law, are so triable.

Respectfully submitted this 17th day of May, 1999.

Robin L. Rosenberg
Fla. Bar No. 907332
HOLLAND & KNIGHT LLP
400 N. Ashley St.
P.O. Box 1288
Tampa, FL 33602-1288
(813) 227-8500
(813) 229-0134 (fax)

Trial Counsel for Plaintiffs